**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **CHARMAYNE BRADBERRY,** on behalf of herself and all others similarly situated, | : | |
| Plaintiffs, | : | Civil Action File Number: 1:22-cv-04754-MLB |
| v. | : | |
| **EQUIFAX INFORMATION SERVICES, LLC,** | : | |
| Defendant. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSE REIMBURSEMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

I. INTRODUCTION ........................................................................ 1

II. PROCEDURAL HISTORY ........................................................................ 1

III. THE SETTLEMENT STRUCTURE AND BENEFITS ............................... 3

A. Practice Changes ........................................................................ 4

B. Credit Monitoring Benefits ........................................................................ 5

C. Additional Monetary Benefits ........................................................................ 6

IV. CLASS COUNSEL'S REQUEST FOR ATTORNEY FEES AND FOR REIMBURSEMENT OF COSTS AND EXPENSES IS REASONABLE AND SHOULD BE APPROVED ..................................... 7

A. Legal Standards Governing Fee Requests. ................................................. 8

B. Class Counsel's Fee Request is Reasonable When Viewed as a Percentage of the Fund........................................................................ 9

C. Lodestar Cross Check Also Supports Class Counsel's Fee Request...... . .13

D. Attorney Fee Request Supported by Relevant *Johnson F*actors.................. 15

1. The Time and Labor Required was Substantial and Continuing ........................................................................ 16

2. Class Counsel Assumed a Significant Risk of No Recovery ........................................................................ 17

3. Class Counsel's Skill and Quality of Work Delivered Valuable Benefits to the Class ................................................ 19

4. The Preclusion of Other Employment .................................... 20

5. The Contingent Nature of the Fee ........................................... 20

6. The Amount Involved and Results Achieved.......................... 22

7. Reaction of the Settlement Class to Date ................................ 23

8. Reaction of the Settlement Class to Date……………………….23

V. CONCLUSION ........................................................................................ 25

**EXHIBITS**

Exhibit 1 – Settlement Agreement
Exhibit 2 - Declaration of Ari Marcus
Exhibit 3- Declaration of John Soumilas
Exhibit 4- Weekly Status Report

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allapattah Services, Inc.*,
454 F.Supp. 2d. 1185 (S.D. Fla. July 6, 2006) .......... 21

*Am. Civil Liberties Union of Georgia v. Barnes*,
168 F.3d 423 (11th Cir. 1999) .......... 8

*Blum v. Stenson*,
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) .......... 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 9, 12

*Camden I Condo. Ass'n v. Dunkle*,
946 F. 2d 768 (11th Cir. 1991) .......... *passim*

*In re Catfish Antitrust Litig.*,
939 F. Supp. 493 (N.D. Miss. 1996) .......... 16

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......... 23

*In re: Checking Account Overdraft Litig.*,
2013 WL 11319242 (S.D. Fla. Aug. 2, 2013) .......... 20

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) .......... 19, 23

*David v. Am. Suzuki Motor Corp.*,
2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) .......... 12, 27

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) .......... 21

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ..................................................... 11

*In re Friedman's, Inc. Sec. Litig.*,
2009 WL 1456698 (N.D. Ga. May 22, 2009) ....................................... 20, 22, 24

*In re Gould Sec. Litig.*,
727 F. Supp. 1201 (N.D. Ill. 1989) .................................................................. 10

*In re Ikon Office Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ...................................................................... 24

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ................................................................. 9, 14

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (11th Cir. 1974) ........................................................................... 14

*Kidd v. Thompson Reuters Corp.*,
17-3550 (2d Cir. 2019) ..................................................................................... 17

*Norman v. Hous. Auth. of City of Montgomery*,
836 F.2d 1292 (11th Cir. 1988) ..................................................................... 8, 20

*Pinto v. Princess Cruise Lines, Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ....................................................... 14, 20

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) ................................................................ 20, 24

*Ressler v. Jacobson*,
822 F. Supp. 1551 (M.D. Fla. 1992) ................................................................ 19

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ......................................................................... 17

*State of W. Va. v. Chas. Pfizer & Co.*,
314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*,
440 F.2d 1079 (2d Cir. 1971) ............................................................................ 17

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ................................................10, 12, 19

*U.S. Football League v. Nat'l Football League*,
644 F. Supp. 1040 (S.D.N.Y. 1986), *aff'd,*
842 F.2d 1335 (2d Cir. 1988)..........................................................................17

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999)...................................................................11, 23

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*,
364 F. Supp. 2d at 993 .....................................................................................15

## STATUTES

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq*. .........................*passim*

15 U.S.C. § 1681n(a)(3) ..........................................................................................8

15 U.S.C. § 1681o(a)(2)............................................................................................8

## FEDERAL RULES

Fed. R. Civ. P. 23(h) ................................................................................................8

## I. INTRODUCTION

This class action brought under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681-1681x, has been hard-fought for nearly four years. Following extensive discovery, depositions, and multiple mediation sessions, the parties ultimately reached an arm's-length settlement that provides meaningful relief to approximately 37,000 consumers. Plaintiffs now respectfully request that the Court approve attorneys' fees and litigation expenses. Defendant Equifax does not contest the requested relief. See **Settlement Agreement** marked as **Exhibit 1.**

Class Counsel's requested fees and expenses are reasonable when compared to a percentage of the total benefit created for the Class and also under a lodestar crosscheck. In support of their application approving payment of attorneys' fees and reimbursement of costs and expenses, Class Counsel rely upon the attached Declarations of Ari Marcus, Esq. (**Exhibit 2**, "Marcus Decl."), and Declaration of John Soumilas, Esq. (**Exhibit 3**, "Soumilas Decl."). The reasonableness of the fee request is further reinforced by the fact that no class member to date has lodged any objection.

## II. PROCEDURAL HISTORY

Plaintiff Bradberry filed her class action complaint on December 01, 2022. (Doc. 1). The parties then conducted extensive discovery, including the exchange of

written interrogatories and responses and the production of documents, and multiple depositions. Discovery was vigorously contested throughout the litigation. Following extensive negotiations and multiple disputes regarding electronically stored information, the parties ultimately exchanged more than **100,000** documents. Plaintiff's counsel undertook a comprehensive review of these materials in preparation for anticipated Rule 30(b)(6) depositions and summary judgment motion, requiring a substantial investment of attorney time and resources.

Early in the discovery stage, counsel for Plaintiff engaged in extensive arms-length settlement discussions with Equifax, including a full day in-person mediation in Chicago, Illinois with Retired Judge Wayne R. Andersen. Although the mediation did not result in a settlement, the mediation was helpful in the next stages of the litigation. Discovery then ensued for several years. Almost immediately prior to Equifax's Rule 30(b)(6) deposition, the parties again engaged in extensive arms-length settlement discussions. With the Court's approval, a stay was put in place and the parties participated in a full day in-person mediation on June 23, 2025 in Philadelphia, Pennsylvania with the assistance of experienced and well-regarded private mediator, Retired Judge Diane Welsh. To facilitate mediation, the parties submitted detailed mediation memoranda and supporting documents, setting forth their respective views on the cases.

The in-person mediation resulted in a settlement, and shortly thereafter, resulted in a formal settlement. As is often the case in complex litigation, after a deal is reached in principle, the devil remains in the details. This phase was protracted and required considerable thought and often extended periods were necessary to turn around ideas between the parties. The drafting process consumed over several months where the parties spent a large part of time crafting the details of the settlement agreement, the long and short form notice, and anticipated email claim forms. The parties did not finalize the settlement agreement until November 17, 2025, which it attached to a Motion for Preliminary Approval. (Doc. 63).

In preliminarily approving the class settlement, the Court specifically found that the class representatives and Class Counsel were adequate, the settlement was negotiated at arm's length, and the relief obtained for the Class was adequate and equally applied to all Class members. (Doc. 64)

## III. THE SETTLEMENT STRUCTURE AND BENEFITS

Plaintiff secured significant relief for the Settlement Class through this settlement. Initially, Equifax agreed to implement substantive practice changes to address the underlying issue. To ensure those changes remain effective, Equifax also agreed to provide every Settlement Class Member with six months of complimentary access to Equifax Complete, its credit monitoring service. Finally, the settlement

establishes a cash settlement fund from which all Settlement Class Members who submit valid claims will receive a *pro rata* cash payment for harm caused by the reporting of duplicate collection accounts. Further, all benefits obtained for a Class member will under no circumstance revert to Equifax and any uncashed checks will be donated to a *cy pres* recipient that is both agreed on by the parties and approved by the Court. See **Exhibit 1.**

### A. Practice Changes

As an essential component of the Settlement, benefitting all Settlement Class Members as well are thousands of other consumers going forward, Class Counsel pushed for and required Equifax to agree to make changes to its practices related to the problem of duplicate reporting of collection accounts complained of in this litigation. Within forty-five days after the Settlement becomes final and effective, Equifax will take steps to affirm that all Duplicate Collection Accounts have been removed from Settlement Class Members' Equifax credit files and remove any such accounts that have not already been removed. Furthermore, Equifax will continue to implement the changes to its practices to ensure that collection accounts will not be duplicated in consumers' Equifax credit files for a minimum of six (6) months. This nonmonetary relief is both significant and valuable because it provides immediate, retrospective relief by correcting

existing inaccuracies while also requiring prospective practice changes designed to prevent the same errors from occurring in the future.

A useful point of comparison is the recent class action *Meeks v. Equifax Information Services LLC*, Case No. 3:21-cv-07727-CRB (N.D. Cal.). There, the settlement class consisted of approximately 39,000 consumers, a class size comparable to the one here. As part of the settlement, Equifax agreed to implement a practice change requiring the removal of certain collection tradelines. Class Counsel retained an expert who valued that nonmonetary relief at $50 per affected consumer. The court approved an award of $300,000 in attorneys' fees based, in part, on that prospective benefit. Applying the same $50-per-consumer valuation to the approximately 37,651 class members in this case yields an estimated value of approximately $1,882,550 for the comparable prospective relief.

**B. Credit Monitoring Benefits**

Additionally, all members of the Class that do not elect to opt out of the settlement, will receive a code to redeem a complimentary access to its credit monitoring product **Equifax Complete** for a period of six (6) months. The product includes credit file monitoring, alerts of changes to consumers' Equifax credit files, and up to $500,000 in identity theft insurance and is currently valued at $59.70 per

class member ($9.95 a month multiplied by 6 months). This gift card is not a "coupon" or any other "offer" requiring the Class member to purchase anything else and requires only that the Class member input his or her code online. Class Counsel took great care to ensure that Settlement Class Members are not required to agree to any restrictive arbitration provisions that typically accompany this product. Class Counsel worked diligently to provide a streamlined method for delivering a benefit that offers meaningful value to the large number of consumers affected by the conduct at issue in this litigation.

When multiplied by 37,651, this amounts to a total benefit to the Class that equates to $2,247,764.70.

**C. Additional Monetary Benefits**

In addition to practice changes and access to **Equifax Complete**, the Settlement provides all Settlement Class Members with the opportunity to make a claim to receive a cash payment from a Settlement Fund of $2,200,000. All Settlement Class Members who submit Valid Claims shall receive a *pro rata* payment after expenses and fees are paid. While the amount of the payment will not be determined until after the Claims Submission Deadline, Class Counsel expect that such payments will be significant.

Class Counsel worked diligently with Equifax to develop a streamlined claims process that minimizes the burden on Settlement Class Members. To submit a claim, a claimant need only certify that they are the individual to whom the notice was sent, provide their current address and telephone number, and check two simple attestation boxes. The claimant then selects a preferred payment method, including PayPal, Venmo, Zelle, prepaid card, or paper check. By eliminating unnecessary barriers and creating a straightforward claims process, the Settlement has encouraged strong early participation. Although the claims submission deadline has not yet expired and a final claims total is not yet available, 575 claims were submitted within the first ten days following the distribution of the mailed and email notices. Since the funds are non-reversionary, the value of the monetary fund is $2,200,000.

In total, the monetary value of the Settlement's credit monitoring and cash payment components is $4,447,764.70**.** This figure reflects only the direct economic benefits made available to Settlement Class Members. When the value of the Settlement's non-monetary injunctive relief is also considered, the total value of the relief obtained through this litigation increases to as much as $6,330,314.70**.** Accordingly, the Settlement provides substantial and meaningful benefits to the

Class, consisting of both immediate financial compensation and prospective practice changes designed to reduce the likelihood of similar harms occurring in the future.

## IV. CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES FOR REIMBURSEMENT OF COSTS AND EXPENSES IS REASONABLE AND SHOULD BE APPROVED

### A. Legal Standards Governing Fee Requests

Fed. R. Civ. P. 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The settlement agreement here provides for the fees and expenses now sought by Class Counsel, and further the federal statute implicated in this litigation, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq*. ("FCRA"), is a fee-shifting statute that *mandates* the award of reasonable attorney's fees and costs to a prevailing party. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

A district court has "wide discretion" in exercising its judgment on the appropriate fee amount though the court must articulate the decisions it makes, give principled reasons for those decisions, and show the specific fee calculations. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). Its award of attorney fees will only be reviewed if there is an abuse of discretion. *Camden I Condominium Ass'n, Inc.*, 946 F.2d at 774. "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow

proper procedures in making the determination or bases an award upon finding of fact that are clearly erroneous." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quotation omitted).

In the exercise of their discretion, courts may base an award of attorneys' fees on either the percentage of the common benefit conferred or the lodestar method. "Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards." *Camden I Condo. Ass'n v. Dunkle*, 946 F. 2d 768, 774 (11th Cir. 1991); *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. at 696 (fee supported by percentage of common fund approach also fair and reasonable under lodestar approach).

Additionally, because the fees, costs and expenses here were incurred without any guarantee of reimbursement, Class Counsel had a strong incentive to ensure that money was properly spent. Courts routinely approve costs and expenses incurred in the prosecution of complex cases. *See Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *5 (M.D. Fla. Aug. 21, 2014), *aff'd,* 618 F. App'x 624 (11th Cir. 2015) (approving fee-and-cost award).

**B. Class Counsel's Fee Request is Reasonable When Viewed as a Percentage of the Fund**

It is well established in this Circuit that when a representative party has conferred a substantial common benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Gevaerts et al. v. TD Bank, NA. et al.* No. 1:2014-cv-20744 (S.D. Fla. Nov. 5, 2015) quoting *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). As a result, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citing *Van Gemert*, 444 U.S. at 478); see also *Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

As set forth above, the Settlement here creates a substantial value to the

Settlement Class. The cash payments and credit monitoring benefits alone have an aggregate value of $4,447,764.40. When the injunctive relief value is included, the total value increases to more than $6.3 Million. These benefits constitute the appropriate denominator for evaluating Class Counsel's requested fee.

Although the benefits in this case are not contained in a traditional lump sum common fund, courts within the Eleventh Circuit have considered the value of non-monetary benefits created by a class action, including a defendant's practice changes and internal investment, to award attorneys' fees based upon common fund analysis. *See Sanchez v. State Farm Mutual Automobile Insurance Company*, No. 3:21-cv-00372-TJC-LLL (M.D. Fla. August 26, 2025) ("the Court reached its conclusion regarding attorneys' fees and costs by attributing value to both the monetary and the non-monetary components of this Settlement"); *See also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020).

Moreover, Eleventh Circuit precedent makes clear that, in claims-made settlements, the relevant measure is the value of the relief made available to the class, not just the amount Settlement Class Members choose to claim. *See Waters v. Intern. Precous Metals Corp.,* 190 F.3d 1291, 1297 (11th Cir. 1999) (for purposes of calculating attorneys' fees, approving valuation based on total value of relief available, as "[t]he fact that there were a reduced number of claimants had no effect

at all on the amount each class member received"). Indeed, "[t]he Supreme Court has approved the practice of basing attorneys' fees off the total possible amount recoverable by members of the class, not the total amount actually recovered, as the 'right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.'" *Arkin v. Pressman*, 38 F.4th 1001, 1006 n.4 (11th Cir. 2022) (citing *Van Gemert,* 444 U.S. at 480). Accordingly, the Court should evaluate Class Counsel's fee request based on the full value of the relief secured for the Settlement Class.

The determination of a reasonable percentage rests within the Court's sound discretion. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 at 1333 (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20% to 30% of the fund" – though "an upper limit of 50% of the fund may be stated as a general rule." *Id.* (quoting *Camden I,* 946 F.2d at 774-775). Likewise, in *Waters*, the Court approved a fee award in excess of the 30% benchmark where the circumstances warranted it. 190 F.3d at 1294–95.

Here, Class Counsel seeks an award of $1,158,333.33. Measured against the

Settlement's direct benefits of $4,447,764.70, the requested fee represents approximately 26% of the value obtained. When the value of the Settlement's injunctive relief is included, the requested fee represents only approximately 18% of the total value conferred upon the Settlement Class. Under either calculation, the requested fee falls comfortably within the range routinely approved by courts in the Eleventh Circuit. Accordingly, the requested fee is reasonable under the percentage-of-the-benefit methodology endorsed by *Camden I* and its progeny.

**C. Lodestar Cross Check Also Supports Class Counsel's Fee Request**

Although the Eleventh Circuit has made clear that the percentage-of-the-benefit method is the preferred approach in common fund cases, courts frequently perform a lodestar cross-check as an additional means of confirming that a requested fee is reasonable. *Camden I*, 946 F.2d 768, at775 (11th Cir. 1991) (recognizing that the lodestar may serve as a useful cross-check). The purpose of the cross-check is not to replace the percentage method, but rather to ensure that the requested fee is reasonable.

Here, a lodestar cross-check confirms that the requested fee is eminently reasonable. This litigation required, as noted *supra,* Class Counsel to devote substantial attorney time over the course of several years. Throughout the litigation,

Class Counsel advanced all litigation costs, assumed the risk of complete nonpayment, and litigated the case entirely on a contingent basis.

As summarized in each of Class Counsel's declarations, Class Counsel collectively devoted 1,280.5 hours to this litigation, resulting in a lodestar of $907,053.07. The requested fee therefore represents a multiplier of only 1.28, well below the multipliers of 2–4 (and higher) that courts in the Eleventh Circuit routinely approve in comparable contingency class actions. *See*, *e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp*., No. 1:14-cv-20880-UU, 2016 WL 10518902, at *7 (S.D. Fla. Oct. 17, 2016); *Pinto v. Princess Cruise Lines, Ltd*.**,** 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (observing that "lodestar multipliers in large and complicated class actions range from 2.26 to 4.5" and that "three appears to be the average"); *Ingram*, 200 F.R.D. 685 at 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4). Here, by contrast, the requested fee results in a multiplier of approximately 1.28, which falls substantially below the range routinely approved in comparable complex class actions. This modest multiplier confirms that the requested fee represents fair compensation for the substantial time, effort, and litigation risk undertaken by Class Counsel. See **Exhibits 2-3.**

Accordingly, whether analyzed under the percentage-of-the-benefit method or through a lodestar cross-check, Class Counsel's requested fee is reasonable and should be approved.

**D. Attorney Fee Request Supported by Relevant *Johnson F*actors**

In *Camden I*, 946 F. 2d 768 (11th Cir. 1991), the Eleventh Circuit recommended that district courts consider the twelve so-called *Johnson* factors in assessing attorney fee applications, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (11th Cir. 1974)). "Whether the district court uses the lodestar or the common-fund method, the district court should apply the twelve [Johnson] factors . . . to determine the appropriate statutory fee or the percentage to be utilized." *Dikeman v. Progressive Exp. Ins. Co.*, 312 F. App'x 168, 172 (11th Cir. 2008). When the *Johnson* and *Camden I* factors are considered, Plaintiffs' fee request is

well within the range of reasonableness approved by courts within the Eleventh Circuit.

Some of these factors do not apply in this case; for example, time limitations imposed by the client, the undesirability of the case, or the nature and length of the professional relationship with the client. "Plainly, not all of the individual *Johnson* factors will apply in every case, so the court has wide discretion as to which factors to apply and the relative weight to assign to each." *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*, 364 F. Supp. 2d at 993 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) ("[R]arely are all of the Johnson factors applicable…" (citation omitted)); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("Even though the Johnson factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered.").

1. <u>The Time and Labor Required was Substantial and Continuing</u>

A review of the effort and time expended by Class Counsel supports the requested fee. As shown *supra*, Class Counsel expended and are expected to expend over 1,200 collective hours in connection with the claims against Equifax through the conclusion of this case.

Class Counsel's work will continue beyond approval of the Settlement, with no additional compensation due to the agreed cap, through the very end of the claims process. Accordingly, the time and labor already required along with the additional anticipated labor by Class Counsel to finally conclude this case, amply demonstrates the reasonableness of the attorneys' fees requested.

2. Class Counsel Assumed a Significant Risk of No Recovery

Class Counsel handled this case on a wholly contingent basis and undertook the significant risk of no recovery. Class Counsel faced many substantial hurdles in prosecuting this matter as discussed *supra,* a stumble at any could have effectively ended the case and any possibility of relief for the Class Members.

Risks in complex class litigation are ever present, and one could find endless examples of class cases in which plaintiffs succeeded at trial on liability but recovered little or no damages after trial or an appeal. *See, e.g.*, *Kidd v. Thompson Reuters Corp.*, No. 17-3550 (2d Cir. 2019) (the case, which all three of the current Class Counsel firms were also counsel of record, lasted approximately four years and resulted in an affirmance on appeal of the lower court's grant of summary judgement and no recovery for counsel or the class); *see also*, *U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986), *aff'd,* 842 F.2d

1335 (2d Cir. 1988) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages").

The current litigation entailed the further risk that neither side could be sure of a favorable jury verdict. Even a victory at the trial stage is not a guarantee of success. *See, e.g.*, *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81.3 million in securities class action against accounting firm on loss causation grounds and judgment entered for defendant). As one court aptly remarked, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971).

This case faced the additional risk that further developments in the law, or the factual evolution of the case could undermine the plaintiffs' claims. If the court certified and maintained the class, and even if the plaintiffs successfully established liability at trial, the jury could award damages in an amount lower than that sought by the class or the amount offered in the settlement. Both sides also faced the uncertainties, risks, expense and significant delays associated with appeals that would inevitably be pursued following trial.

The complexity of the factual and legal issues and the potential risks presented by this litigation strongly support the reasonableness of Class Counsel's requested attorneys' fees.

3. Class Counsel's Skill and Quality of Work Delivered Valuable Benefits to the Class

Despite the challenges involved, Class Counsel were able to litigate this case efficiently because of their experience in litigating consumer class action cases generally and FCRA class actions in particular. Exhibits 2 and 3. This depth of experience in complex consumer class action litigation allowed Class Counsel to pursue the case and negotiate a settlement that capitalized on the claims' strengths while considering the risks of continued litigation. Courts should specifically consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved. *Camden I Condominium Ass'n, Inc.*, 946 F.2d at 772 n.3.

Finally, this Court should also consider the "quality of the opposition the plaintiffs' attorneys faced" in awarding Class Counsel a fee. *Camden I*, 946 F. 2d at 772 n.3; *Columbus Drywall & Insulation, Inc.*, 2012 WL 12540344, at *4; *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001); *Ressler v.*

*Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Equifax was represented by King & Spalding LLP, an experienced and internationally recognized defense firms with more than 1,300 attorneys. The ability of Class Counsel to obtain such a favorable settlement for the Class in light of the vigorous and multifaceted defense mounted by such qualified legal opposition confirms the quality of the representation provided by Class Counsel.

4. The Preclusion of Other Employment

Class Counsel and the other lawyers pursuing this litigation were forced to forgo other employment while working on this matter. This dynamic will continue beyond this motion and at least through and possibly beyond final approval. It is not uncommon to deal with questions for months and sometimes years after Final Approval from Class Members.

5. The Contingent Nature of the Fee

Fees in class action lawsuits of this nature are contingent because virtually no individual possesses a sufficiently large stake in the litigation to justify paying their attorneys on an hourly basis. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla 1992); *see also Norman*, 836 F.2d at 1299. Thus, the Court should give substantial weight to the contingent nature of Class Counsel's fees when assessing the fee request. Indeed, courts have consistently recognized that the risk of receiving

little or no recovery is a major factor in determining the award of fees. *See In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1364 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is '"perhaps the foremost" factor' in Case determining an appropriate fee award"); *see also Ressler*, 149 F.R.D. at 654–55; *In re Friedman's, Inc. Sec. Litig.*, No. 1:03-CV-3475WSD, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

Here, Class Counsel undertook this litigation on a wholly contingent basis and understood the inherent risks and challenges associated with prosecuting one of the largest companies in America with a market capitalization reaching well over $20 billion dollars during the height of the litigation. These lawyers united, assumed all the risks and financial burdens associated with the litigation and worked productively on a solely contingency fee basis to secure common benefits for all consumers who were affected by the Equifax's reporting of duplicate collection tradelines during the class period. This effort required over a thousand hours of attorney and staff time and extensive financial resources, without any guarantee counsel would be compensated. *See* Exhibits 2 and 3.

Indeed, because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result. Thus, the contingent nature of the case and the substantial risks involved in this complex litigation strongly support Class Counsel's fee request. *Blum v. Stenson*, 465 U.S. 886, 902 (Brennan, J. concurring) (noting "the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee.").

6. The Amount Involved and Results Achieved

The eighth *Johnson* factor – "the amount involved, and the results obtained" – is "the most important factor," recognizing as it does that "a fee award should reflect the relief obtained." *Allapattah Services, Inc.*, 454 F. Supp. 2d at 1204–05; *see also Pinto*, 513 F. Supp. 2d 1334 ("The result achieved is a major factor to consider in making a fee award."); *In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. at 351 ("The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."). It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655; *see also In re Friedman's, Inc. Securities Litigation*, 2009 WL 1456698, at *3 (same).

The settlement is a solid result that provides direct monetary benefits to Class members who realistically would not have filed their own individual lawsuits because the vast majority of such cases would have been too small to bring on their own. In short, they all would have received nothing. Here, Class Counsel not only secured a consumer credit monitoring and identity protection program valued at nearly $60 for all 37,000 plus Class Members but also secured an additional monetary benefit for those who suffered harm and opt in of what Class Counsel believes will be in excess of $500.00.

Moreover, the Class also obtained the added benefit of practice changes that will ensure that the negative collection tradeline at issue will remain off the Class Members credit report. Equifax voluntarily agreed to implement new FCRA-procedures because of the settlement. The economic value of this practice change, calculated at about $50 per class member in a similar lawsuit, provides tremendous value to the Class.

Finally, Equifax agreed to pay all settlement administrative costs, and any attorneys' fees and expenses awarded by the Court, which are is a clear and direct benefit to the Class.

7. Awards in Similar Cases

Awards in similar cases more than justifies the requested fees, which are, as a percentage, below those approved in similar cases. See, e.g., *Waters*, 190 F.3d at 1295 (11th Cir. 1999) (33 1/3%); *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d. 1330, 1358 (S.D. Fla. 2011) (30%); *Columbus Drywall*, 2012 WL 12540344, at *6 (awarding fee of 33.3% and listing cases awarding fees based on similar or higher percentages); *Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in the Eleventh Circuit are "roughly one-third" of the benefit to the class and listing cases awarding fees of 30% or higher). One-third of the settlement benefits is typically sought for attorneys' fees and approved in the Eleventh Circuit.

8. Reaction of the Settlement Class to Date

Another factor that is appropriate to consider is the reaction of the Settlement Class. *Camden I Condominium Ass'n, Inc.*, at 775. The class administrator here reports that to date it has properly provided email or mail notice to more than 37,000 unique individuals, that only 514 notices to date were undeliverable, and that *no* class members to date have opted out of the settlement or objected to it. *See* Class Administrator Weekly Status Report marked as **Exhibit 4**.[1]

The deadline for objections to the settlement is September 1, 2026. Should any objections referencing the requested fee be filed by the deadline, Class Counsel will respond to them in their Motion for Final Approval or a supplemental brief.

The favorable reaction of the Class provides further support for Class Counsel's fee request. "The lack of numerous objections is evidence that the requested fee is fair." *Friedman's*, 2009 WL 1456698, at *3; *Ressler*, 149 F.R.D. at 656 (noting that the lack of objections is "strong evidence of the propriety and acceptability" of the fee request); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) (six objectors constituted an "extremely limited" number).

## V. CONCLUSION

Class Counsel, on behalf of all Plaintiffs' Counsel and the Settlement Class, respectfully requests that the Court approve a combined award of fees, costs and expenses in the amount of $1,158,333.33 plus costs of up to $75,000.00[2].

Dated: July 28, 2026

Respectfully submitted,

*/s/ Ari Marcus*
Ari Marcus (pro hac vice)
Yitzchak Zelman (pro hac vice)
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Tel: 732-695-3282
Email: Ari@marcuszelman.com

[2] At the conclusion of the matter, the undersigned anticipates the costs will be around $40,000.

John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
**FRANCIS MAILMAN SOUMILAS P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern District of Georgia, that the foregoing was prepared in 14-point Times New Roman Font.

July 28, 2026

*/s/* Ari Marcus

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

July 28, 2026

*/s/* Ari Marcus